COMMUNITY FIRE PROTECTION DIS-TRICT OF ST. LOUIS COUNTY, a Mu-nicipal Corporation (Plaintiff), Appellant,

v.

BOARD OF EDUCATION OF PATTON-VILLE CONSOLIDATED SCHOOL DIS-TRICT R–3 (Defendant), Respondent.

No. 30137.

St. Louis Court of Appeals.

Missouri.

Sept. 2, 1958.

Motion for Rehearing or to Transfer to Supreme Court Denied Sept. 29, 1958.

T. Douglas Moore, Clayton, for appellant.

Norman C. Parker, St. Louis, for re-spondent.

William B. Kline, Herbert C. Funke, Clayton, amici curiae.

JAMES D. CLEMENS, Special Judge.

Action for declaratory judgment. The trial court ruled against the plaintiff, and it appealed to the Supreme Court which transferred the case here on the ground that no constitutional issue gave it jurisdiction. See Community Fire Protection Dist. of St. Louis County v. Board of Education, Mo., 312 S.W.2d 75, 77. There, the Supreme Court said: "The real and basic question on this appeal is to whom under the facts of this case, as between the School District and the Fire District, has the Legislature granted the authority to determine the minimum standards for fire prevention and fire protection in the construction of the school building. This calls only for a construction of the applicable statutes."

More specifically, the issue presented is whether the right of a school district to erect a school building can be in any way limited by an ordinance of a statutory fire district. The plaintiff Fire District says it can; the defendant School District says it cannot. In its petition the plaintiff Fire District seeks a declaratory judgment and an injunction against the defendant School District to compel compliance with an ordinance of the Fire District requiring building permits and setting a general building code. The case was tried upon the petition, answer and stipulation of facts. No evidence was adduced. The judgment of the trial court was for the defendant. The plaintiff filed a timely motion for new trial which was denied.

The Fire District is organized under the provisions of Chapter 321, RSMo 1949, V. A.M.S. The School District is a reorganized school district established pursuant to Section 165.657 et seq. RSMo 1949, V.A.M. S. The Fire District embraces and affords fire protection to some fifteen municipalities, and certain unincorporated areas, in St. Louis County; including a portion of the School District. Within that common area,

the School District had some years ago constructed an elementary school known as the St. Ann School. The original building of the school, and the additions which are the subject of this proceeding, were designed by architects, and the plans were approved by the Department of Education of the State of Missouri and by the Housing and Home Finance Agency of the United States in order to qualify for financial assistance. When the School District prepared to construct additions to the St. Ann School the Fire District asserted that the construction could not proceed unless the School District secured a building permit and constructed the additions in compliance with the fire ordinance No. 1-A, entitled "Building and Fire Prevention Ordinance," which requires the installation of firewalls and sprinkler systems in buildings of the size and location proposed by the School District.

The Fire District contends that the additions fail to comply with its ordinance. This the School District denies and insists that it has the right to construct these additions and any school buildings in accordance with the standards accepted by the Board of Education of the School District in the reasonable exercise of the Board's own discretion.

Initially, the Fire District also sought to enjoin the School District from proceeding with its proposed construction. However, that point was not presented in the Fire District's motion for new trial nor was it briefed here. So, the injunctive relief sought will be deemed abandoned.

The issue prescribed for us and briefed by the parties is whether it is the Fire District or the School District to whom the Legislature has granted authority to determine minimum standards for fire protection in the construction of the school building.

The Fire District relies on provisions of Chapter 321, RSMo 1949. By that chapter the Legislature provided for the establishment of fire districts as political sub-divisions in Class I counties by initiative peti-

tion, decree of the circuit court, and election. That chapter provides for the election of a board of directors and other officers, and empowers the board to levy and collect taxes, to borrow money, to acquire and operate fire stations and equipment, and to exercise the power of eminent domain. By Section 321.010 thereof a fire district is organized "to supply protection against fire by any available means." Section 321.220 thereof, at sub-paragraphs (12) and (14) gives the Fire District authority:

"To adopt and amend bylaws, fire protection and fire prevention ordinances, and any other rules and regulations not in conflict with the constitution and laws of this state, necessary for the carrying on of the business, objects and affairs of the board and of the district, * * *" and

"To have and exercise all rights and powers necessary or incidental to or implied from the specific powers granted herein. Such specific powers shall not be considered as a limitation upon any power necessary or appropriate to carry out the purposes and intent of this chapter."

The School District relies generally on Article IX, Section 1(a) of the Constitution of Missouri, V.A.M.S., which provides: "A general diffusion of knowledge and intelligence being essential to the preservation of the rights and liberties of the people, the general assembly shall establish and maintain free public schools * * *" and the provisions of Chapter 165, RSMo 1949, V.A.M.S., relating to financing school construction, and specifically on Section 165.370 thereof, which provides that when the needs of a school district require additional facilities " * * the board shall select and procure a site * * * and erect a suitable school building thereon and furnish the same; * *". The School District also relies on Section 165.697 which provides that all building plans shall be approved by the State Board of Education to qualify for financial aid from the State.

The School District contends that by these statutes the Legislature has clothed it with the power to erect the building in question, without hindrance by the Fire District. The Fire District maintains that the School District's proposed building construction is subject to the Fire District's statutory power to ordain measures for the prevention of and protection against the hazards of fire, and that the ordinance in question is "not in conflict with the constitution and laws of this state."

This precise conflict of authority between a statutory fire district and a reorganized school district, has not yet been resolved by our courts. However, our courts have previously dealt with the principle of conflicting authority of public corporations. The Fire District relies on three such opinions in support of its theory.

Thus, the case of Kansas City v. School District of Kansas City, 356 Mo. 364, 201 S.W.2d 930, 932, involved the right of the city to exact fees from the school district for inspecting furnace boilers located in the schools. That right depended upon whether the State had reposed in the City or in the school district "the power and the responsibility of taking measures to protect the people and the property of the people of Kansas City from conflagrations, explosions, smoke nuisances, noxious gases, and casualties which might be caused or occasioned by the facilities of the public school buildings." The Supreme Court analyzed the status of each party and ruled that the school district was not a municipal corporation with diversified powers, but a quasi-public corporation, "the arm and instrumentality of the state for one single and noble purpose, viz., to educate the children of the district." By contrast, the city was held to be possessed of police power, charged with maintaining the safe-

ty, health and general welfare of its populace—to be "a miniature state" within its authorized sphere of action. The court then ruled in favor of the city, saying:

"Since the State itself has taken no precautionary measures, and City has been vested with the regulatory and supervisory responsibilities of the exercise of the police power, and School District (having no police power) has not been expressly and specifically given full duty to attend to these responsibilities, we think the Legislature is content in the thought the measures to be taken are within the police power vested in City. * * * It could be reasonably urged the Legislature is wise in so singly reposing such grave responsibilities in City, in view of the technical experience and advice City's officials and inspectors must have acquired in preparing for and in performing their important duties in connection with the prescribed regulations and regulatory inspections of the facilities of the many buildings of Kansas City. It would also seem reasonable to say that School District enjoys a fine advantage to itself by having the technical and experienced supervision of City's inspectors by which the lives and health of students, teachers and other employees of the schools and School District's property may be the better protected, and with no more disadvantage than the payment of a reasonable inspection fee."

In the case of Smith v. Board of Education of City of St. Louis, 359 Mo. 264, 221 S.W.2d 203, 205, the issue was the conflict of powers between the city and the board to regulate school restaurants. By ordinance the city provided for inspection and regulation of all restaurants as to food, utensils, waste disposal and the health and cleanliness of food handlers. By statute, all schools were empowered to operate restaurants, and the commissioner of school buildings in St. Louis was charged with the care of school buildings and was responsible for the sanitary condition thereof. The Supreme Court did not make a specific distinction between the city's possession of police power and the school board's lack thereof, but ruled the conflict in favor of the city as to regulation of the school restaurants because the Legislature had not "expressly and specifically" given the school board "full duty to attend to these responsibilities."

This court was presented with the issue of conflicting authority of municipalities to regulate building construction in the furtherance of fire prevention in the case of Wellston Fire Protection Dist. of St. Louis County v. State Bank & Trust Co. of Wellston, Mo.App., 282 S.W.2d 171, 176. There, a builder complied with the city's building code and obtained its building permit, but refused to comply with the fire district's ordinances as to construction and building permits. The city contended that within its geographical limits it had exclusive power to regulate and control building construction for all purposes and that the fire district had no authority within the city but to fight fires. The fire district there contended that it was not so limited but was vested with police power throughout its district to enact ordinances controlling the construction of buildings in the furtherance of fire prevention. This court contrasted the legislative bestowal of general powers upon the city and the later specific grant of power to the fire district to promulgate "a complete plan for the primary purpose of preventing and combating fires and protection from the perils thereof within the confines and limits of such a district", and ruled:

"After analysis of the fire protection district statute, the evident purpose thereof, the broad scope of the law, the vesting of police power in a district created pursuant thereto, and the state of confusion which could be precipitated if both the city and the district attempted to function in the same field, we hold that the Legislature intended to and did withdraw the author-

ity from the city to regulate and control construction of buildings and other structures with respect to preventing and protecting against fires and lodged that authority in the district. * * *"

Applying here the principles settled in those three cases, it is clear to us that the Legislature has subjugated the School District's general power to construct buildings to the Fire District's specific power to regulate the construction of buildings in the furtherance of fire prevention. This is so because of the comparative status of the parties, the Fire District being a municipal corporation endowed with police powers in the field of fire prevention, and the School District being a quasi-public corporation without police power with only the limited power of public education. Inasmuch as the Fire District is exercising police power delegated to it by the State, the School District is just as subservient thereto as if the provisions of the Fire District's ordinances had been prescribed by the State itself. Also, we note that the language granting powers to the School District as to school buildings is directive and elastic, and it is certainly no mandate to erect school buildings in disregard of reasonable building regulations, which the Fire District has been empowered to ordain. So, this result must also prevail because the Legislature, by granting specific power to the Fire District to ordain fire prevention measures is deemed to have denied contrary power to the School District.

The School District relies primarily on the case of Board of Education of City of St. Louis v. City of St. Louis, 267 Mo. 356, 184 S.W. 975. In that case the School Board was constructing a school building with a ventilating system which did not comply with the city's building code, and the city was restrained from enforcing the provisions of its code. There, the school board was clothed with specific legislative power, now Sections 165.563 et seq. RS

Mo 1949, V.A.M.S., applicable only to school districts in cities of over 500,000 population, by which it was empowered to design and maintain school buildings and the ventilating and sanitation thereof. There, the school board's power arose from a specific legislative grant, which is absent here. This distinction was recognized by this court in the case of Wellston Fire Protection Dist. of St. Louis County v. State Bank & Trust Co., supra, and by the Supreme Court in Smith v. Board of Education of City of St. Louis, supra.

Of similar import is the School District's cited case of Hall v. City of Taft, 47 Cal.2d 177, 302 P.2d 574, where the city was denied control of local school construction, but because the State of California had invested the Board of Education with complete authority in the field of building construction. The distinction is quite apparent.

The School District also seeks support from the case of City of Fulton v. Sims, 127 Mo.App. 677, 106 S.W. 1094, where the city was denied the right to enforce its mandatory weighing ordinances against a coal dealer making deliveries to a state institution which had its own scales. But, that decision was reached on the premise that the State had retained to itself the right to operate its institution, and thus presents a question of superiority between the State itself and one of its subdivisions. In the case of Kansas City v. Fee, 174 Mo.App. 501, 160 S.W. 537, the Fulton case and also the School District's cited case of City of Milwaukee v. McGregor, 140 Wis. 35, 121 N.W. 642, were distinguished, and it was held that the city could convict a school district's fireman who failed to comply with the city's ordinance requiring that all firemen be licensed by the city.

The respondent School District also relies heavily on the case of Salt Lake City v. Board of Education, 52 Utah 540, 175 P. 654. The issue there was quite similar to the case at bar and the city was denied

the right to enforce its building restrictions upon the school board. Suffice to say that our Supreme Court has denounced the principle set forth in this Utah case, and said in Kansas City v. School District of Kansas City, supra [356 Mo. 364, 201 S.W. 2d 935]: "We are not disposed to here further analyze these opinions so ably reasoned and written; however, the tendency of decision in harmony with ours herein seems to us more likely to promote the public safety, health and welfare."

■ The School District cites the recent Supreme Court case of State ex rel. St. Louis Union Trust Co. v. Ferriss, Mo., 304 S.W.2d 896. There the question was whether the Ladue School District could condemn a school site at a location zoned by the City of Ladue for residential purposes. By statute, the school district was empowered "to select, locate and procure sites for school buildings" (304 S.W.2d 900) and the city was empowered to regulate the location of buildings for "trade, industry, residence *or other purposes.*" (304 S.W.2d 900). The Supreme Court applied the rule of ejusdem generis to the latter clause, ruled that the school district's authority to select a school site was an express grant of power from the State that must prevail over the limited zoning power of the city. We find nothing in that opinion contrary to the conclusion we have reached here. Although unrestrained zoning could become a prohibition against the

erection of schools, this cannot be said of reasonable building ordinances of fire protection districts.

We conclude that as between these parties, the Legislature has granted to the Fire District the authority to determine the minimum standards for fire prevention and fire protection in the construction of the school building. The cause is therefore reversed and remanded with directions to enter a decree declaring that:

(1) Community Fire Protection District of St. Louis County is vested with authority under Chapter 321 of the Revised Statutes of Missouri, 1949, to regulate and control by proper ordinance, the construction, repair, alteration, wrecking, moving, or dismantling of buildings within its limits, solely and only for the purpose of preventing fire and protecting property and members of the public from the hazards of fire, and

(2) The authority of Board of Education of Pattonville Consolidated School District R–3 to construct school buildings within its district is subject to the authority of said Fire District prescribed in the foregoing paragraph.

The court should also tax all costs against the School District. It is so ordered.

RUDDY, P. J., and ANDERSON, J., concur.