**Howard DYER, Jr., et al., Plaintiffs,**
**v.**
**M. H. RICH, Sr., et al., Defendants.**
**No. GC6452.**

United States District Court
N. D. Mississippi,
Greenville Division.

Sept. 28, 1966.

See also D.C., 259 F.Supp. 736.

Philip Mansour, Greenville, Miss., for plaintiffs.

Edward J. Bogen, Bogen, Wilkes & McGough, and J. A. Lake, Lake, Tindall, Davison & McGee, Greenville, Miss., for defendants.

## OPINION OF THE COURT

CLAYTON, Chief Judge.

This cause originated on the complaint of certain residents of the Third Supervisor's District of Washington County, Mississippi, to correct malapportionment of the five districts of the

county for the election of members of the board of supervisors. On behalf of themselves and all other residents of the populous third district, plaintiffs alleged that population disparities among the five districts—each of which elects one member of the board—constitute invidious discrimination against residents of the third district in violation of the Fourteenth Amendment. The complaint sought to have the defendants, the present members of the board of supervisors, enjoined to redistrict the county on a constitutionally permissible basis or to have the court do that task for them.

▆▆ A three-judge court was convened pursuant to 28 U.S.C. §§ 2281 and 2284 but that court subsequently determined that this action did not require such a forum and that jurisdiction was properly vested in the conventional district court. This determination is expressed in a per curiam opinion of that court released this date and is made effective by an order dissolving the three-judge court and directing that this cause proceed before the single judge of the district court. The convening of the statutory three-judge court having been improvident, all proceedings heretofore and all actions of the three judges are deemed to have been done before and by three judges sitting as a conventional district court. The procedural history of this litigation is amply detailed in the opinion of the three judges and will not be repeated here. The evidentiary record was made by stipulation and this cause is before the court on the briefs of counsel for disposition on the merits.

Mississippi counties are required to be divided into five supervisors' districts by state law.[1] The board of supervisors is charged with the duty of dividing the county into five districts "with due re-

1. Mississippi Constitution of 1890, § 170, and Mississippi Code Annotated 1942 (Recompiled) § 2870. At the time that this action was filed, the statute was as follows:

Each county shall be divided into five (5) districts, with due regard to equality of population and convenience of situation for the election of members of the boards of supervisors, but the districts as now existing shall continue until changed. The qualified electors of each district shall elect, at the next general election, and every four (4) years thereafter, in their district, one member of the board of supervisors; and the board, by unanimous vote of all members elected or when so ordered by a vote of the majority of the qualified electors of the districts affected voting in an election as hereinafter provided, may at any time, except as hereinafter provided, change or alter the district, the boundaries to be entered at large in the minutes of the proceedings of the board.

The board, upon the petition of twenty-five per cent (25%) of the qualified electors of the county, asking that the districts of the county be changed, or altered, and setting out in such petition the changes, or alterations desired, shall call a special election for a date which shall be not less than thirty (30), nor more than sixty (60) days from the date of the presentation of the petition to the assembled board. A majority of the qualified electors of the county shall determine the issue of such election.

Provided, however, that in any county in the state having a supervisors districting containing more than fifty per cent (50%) of the population of the county according to the last federal census and/or more than fifty per cent (50%) of the assessed valuation of the county, the issue of the election heretofore provided for shall be determined by a majority of those participating in said election.

Provided further, however, that in any county in the state bordering on the Gulf of Mexico or Mississippi Sound and having a population in excess of eighty thousand (80,000) according to the last federal census, the issue of the election heretofore provided for shall be determined by a majority of the qualified electors of the county, and if such majority fail to vote affirmatively, no new petition shall be considered for four (4) years. Each such election shall be based upon a petition of twenty-five per cent (25%) of the qualified electors of the county, and to which petition shall be attached a map or plat defining the boundaries of each beat as proposed by said map or plat, and the election thereon shall be on such proposal.

And the board, whenever a majority of the qualified electors of the county shall have voted to change or alter the existing

gard to equality of population and convenience of situation for the election of members of the board" and the members are given the power, either on their own unanimous vote or when so ordered by a majority of the qualified electors voting in a special election, to change or alter the districts. After the factual record was completed and the briefs submitted in this cause the statute was amended by the legislature.[2]

Facts pertinent to disposition will be stated. Each of the defendant members of the board of supervisors was elected solely by the qualified electors of their respective districts under the election laws of the State of Mississippi in force in 1963, and they are now acting as members of the board of supervisors. According to the 1960 federal census, the population of each of the five districts was as follows:

|  | County | First Dist. | Second Dist. | Third Dist. | Fourth Dist. | Fifth Dist. |
|---|---|---|---|---|---|---|
| Population | 78,153 | 2,605 | 3,016 | 49,451 | 14,801 | 8,280 |
| Percentage of Population |  | 3.33% | 3.98% | 63.19% | 18.91% | 10.59% |

Approximately 63% of all the property in Washington County which is assessed for ad valorem tax purposes at approximately sixty-five million dollars is located within the Third Supervisor's District. No petition for redistricting bearing the signatures of 25% of the qualified electors of the county has ever been filed with the board of supervisors, although the present board of supervisors has been requested by a citizens committee of fifty members appointed by the Mayor of the City of Greenville pursuant to a resolution adopted by the City Council of Greenville (the county seat) to redistrict the county. The defendants have taken no action toward redistricting.

Modern concepts of justice compel a finding that this situation presents a case of invidious discrimination within the meaning of Baker v. Carr[3] and

districts to those set forth and described in the petition, shall at its first meeting thereafter establish said proposed districts by order on its minutes, to be effective on the first day of January following; and in default thereof, may be commanded to do so by writ of mandamus.

When the districts are changed, by the qualified electors in an election as aforesaid, the board, of its own motion, shall not change or alter said districts within four (4) years thereafter.

This act shall not be construed to affect any supervisor now holding office until the expiration and end of his present term of office.

2. H.B. 223, approved by the governor on 27 May, 1966, amended section 2870 so as to provide an alternative method for electing members of the board of supervisors. The amended statute permits the board to adopt an order providing that all electors of the county shall be eligible to vote for each member of the board. Each candidate must be a resident of the district which he proposes to represent. If within sixty days of adoption and publication of such an order twenty per centum of the electors of the county present a petition to the board objecting to the alternate method, the board must call an election on the issue. If a majority of those voting approve the alternate method, members of the board will be elected at large. The fourth, fifth and sixth paragraphs of the former statute, as quoted in footnote 1, supra, were eliminated.

3. 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). Other cases in the Supreme Court have refined and extended the doctrine of *Baker.* The "one person, one vote" premise, first announced in Gray v. Sanders, 372 U.S. 368, 83 S.Ct. 801, 9 L. Ed.2d 821 (1963), (Georgia county unit system), was followed and applied in Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), (Alabama legislature). Concurrently, the principles established by Baker, Gray and

its progeny. The defendants rely on certain decisions of other district courts such as Sailors v. Board of Education, 254 F.Supp. 17 (N.D.Mich.1966) and Moody v. Flowers, 256 F.Supp. 195 (No. 860–S, M.D.Ala. June 14, 1966), but their reliance is misplaced. Those and similar cases are all distinguishable on their facts, either as to the extent of the population imbalance or with respect to the authority and responsibility of the governmental agency involved. More in keeping with the situation in Washington County, than the cases cited by defendants, is the case of Ellis v. Mayor and City Council of Baltimore, 352 F.2d 123 (4th Cir. 1965) wherein it was held that the principles announced by the Supreme Court, footnote 1, supra, applied to districts for the election of councilmen for a municipal government. An imbalance of 1 to 1.37 in total population between two districts was disapproved. See also Bianchi v. Griffing, 238 F.Supp. 997 (E.D.N.Y.1965) and Brouwer v. Bronkema, No. 1355 (Cir. Ct. Kent Co., Mich., Sept. 11, 1964).

In Mississippi, a county board of supervisors is a constitutional agency of government, Mississippi Constitution of 1890, § 170, which has been granted many powers and responsibilities by the legislature. See, e. g., Mississippi Code Annotated 1942 (Recompiled) §§ 2870–3019. Such boards have legislative, executive and quasi-judicial powers, duties and responsibilities. They have full jurisdiction over roads, bridges and ferries. They equalize ad valorem assessments for taxes for the whole county and fix the tax levies for the county, for supervisors districts and for county schools. They may acquire lands by purchase or by eminent domain for county purposes and may sell county property. They authorize and approve expenditures of public funds for a long catalogue of governmental purposes. They issue bonds for the county, for its districts and schools by their own action, as the result of an election or, in some instances, in response to petition. They, in effect, are purchasing agents for the county and many of its offices and agencies. They have zoning responsibilities, promotional authority, and subsidizing powers for certain activities and undertakings. They can issue subpoenas and punish for contempt. Its members are conservators of the peace and individually possess the judicial powers of a justice of the peace. In short, they are, to a large extent, the government of their county. And, significantly, a majority of such a board may bind the county.

In Washington County, no combination of supervisors could speak for a majority of the residents of the county absent the vote of the third district supervisor. The voting strength of a voter of the first district is 18.97 times greater than the voting strength of a voter of the third district. This intolerably shocking dilution of the latter's vote cannot be allowed to continue. Regardless of the applicability, vel non, of principles enunciated in the apportionment cases, footnote 1, supra, to other political subdivisions of this and other

Reynolds have been followed in WMCA, Inc. v. Lomenzo, 377 U.S. 633, 84 S.Ct. 1418, 12 L.Ed.2d 568 (1964), (New York legislature); Maryland Committee v. Tawes, 377 U.S. 656, 84 S.Ct. 1429, 12 L. Ed.2d 595 (1964), (Maryland legislature); Davis v. Mann, 377 U.S. 678, 84 S.Ct. 1441, 12 L.Ed.2d 609 (1964), (Virginia legislature); Roman v. Sincock, 377 U.S. 695, 84 S.Ct. 1449, 12 L.Ed.2d 620 (1964), (Delaware legislature); and Lucas v. Forty-Fourth General Assembly of the State of Colorado, 377 U.S. 713, 84 S.Ct. 1459, 12 L.Ed.2d 632 (1964), (Colorado legislature). In *Lucas*, a legislative redistricting plan had been approved by the people in a referendum. In its opinion rejecting this plan, the Supreme Court, inter alia, said:

A citizen's constitutional rights can hardly be infringed simply because a majority of the people choose that it be. We hold that the fact that a challenged legislative apportionment plan was approved by the electorate is without federal constitutional significance, if the scheme adopted fails to satisfy the basic requirements of the Equal Protection Clause, as delineated in our opinion in Reynolds v. Sims.

states, it must be held that they apply to a governing body which has the broad powers, duties and responsibilities of the Mississippi county board of supervisors. When the right to an equal voice in selecting the members of that body is diluted and denied as in this case, the Fourteenth Amendment affords an avenue of relief.

 This court has jurisdiction of this cause pursuant to 28 U.S.C. § 1343 (3) and plaintiffs are entitled to have the court require correction of the extreme disparity of population among the supervisors' districts of Washington County. However, the court is aware that recent state legislation, footnote 2, supra, provides an additional alternative method for dealing with this problem, which must be taken into account in fashioning this court's decree. As noted earlier, this new legislation was of recent date and the record and briefs in this cause had already been completed at the time of its enactment. Neither the parties nor the court have given any consideration to the amendment and the validity of any action by the defendants under the amendment has not yet been placed in question in this cause. The court will have occasion to consider the validity of such action and its effect on this cause only when, and if, such issues are properly tendered here.

A proper solution to the problems which must now be solved would be to require defendants to prepare and submit on or before November 1, 1966, a proposed plan for this court's approval for the redistricting of Washington County into five districts for the election of supervisors, with the present population of each such proposed district to meet criteria established by the cases of the Supreme Court herein cited and followed, and to permit them to express concurrently with such submission their wishes with respect to adoption or not of the provision for election of supervisors at large (see footnote 2, supra). On or before November 22, 1966, plaintiffs will be required to file with this court and serve on defendants their re-ply to the proposals of the defendants, expressing their objections, if any, or concurrence therewith. If the proposals of the defendants in any way incorporate or rest upon the provisions of the amended statute, or if that amendment should be deemed to have any bearing upon this cause in any way, the plaintiffs may concurrently with their reply put in issue the validity of actions taken or proposed under the new version of the statute, if they so desire, and inform the court of their objections of law as well as of fact.

An order will be entered in accordance with the foregoing.