Della HADLEY et al., Appellants,

v.

The JUNIOR COLLEGE DISTRICT OF METROPOLITAN KANSAS CITY, Missouri, et al., Respondents.

No. 52758.

Supreme Court of Missouri,
In Banc.

Sept. 9, 1968.

Rehearing Denied Oct. 14, 1968.

Irving Achtenberg, Kansas City, for appellants, Achtenberg, Sandler & Balkin, Kansas City, of counsel.

Norman H. Anderson, Atty. Gen., Louis C. Defeo, Jr., Asst. Atty. Gen., Jefferson City, Dietrich, Tyler, Davis, Burrell & Dicus, William J. Burrell, Clarence H. Dicus, Arlyn D. Haxton, Kansas City, for respondents except Norman H. Anderson.

EAGER, Judge.

The plaintiffs here challenge as unconstitutional the method prescribed by § 178.-820, RSMo (Cum.Supp.1967), V.A.M.S. for the election of trustees of the Junior College District of Metropolitan Kansas City and, supposedly, of all other existing junior college districts in Missouri. This suit is one for a declaratory judgment and permanent injunctions. Plaintiffs are five citizens and taxpayers of the defendant district and of the Kansas City School District; two of them are members of the Board of Trustees of the defendant district. The defendants are the district, its other four members, its Secretary, and the Attorney General of Missouri. Plaintiffs assert: that they fairly represent, as a class, all persons similarly situated in the State of Missouri (including those in other junior college districts) "being chosen so as to fairly insure adequate representation of all;" that the questions raised are of common and general interest to all taxpayers and voters of the Kansas City School District; that the interested persons are too numerous to join; and that the defendants here are representative of all junior college districts in the state, their trustees, and their secretaries. There are eleven junior college districts in Missouri. We recognize plaintiffs as fairly representative of the citizens and taxpayers of the Kansas City School District, but no facts whatever are alleged to justify the conclusion that they fairly represent the citizens and taxpayers of any other junior college district or any part thereof; nor are defendants shown by factual allegations to be representative of the other districts and their officers. Civil Rules 52.09, 52.08, V.A.M.R. No other plaintiffs or defendants have entered an appearance. We recognize the action as a proper class suit on behalf of the citizens of the Kansas City School District against the named defendants only. Perhaps the resulting distinction is, in this case, more academic than real, but the allegations and claims are too broad.

Section 178.820, about which these issues revolve, is as follows:

"1. In the organization election six trustees shall be elected at large, except that if there are in the proposed junior college district one or more school districts with more than thirty-three and one-third per cent and not more than fifty per cent of the total school enumeration of the proposed district, as determined by the last school enumeration, then each such district shall elect two trustees and the remaining trustees shall be elected at large from the remainder of the proposed district. If any school district has more than fifty per cent and not more than sixty-six and two-thirds per cent of the total school enumeration of the proposed district then three trustees shall be elected at large from such school district and three trustees at large from the remainder of the proposed district. If

any school district has more than sixty-six and two-thirds per cent of the total school enumeration of the proposed district then four trustees shall be elected at large from such school district and two trustees elected at large from the remainder of the proposed district. If the trustees are elected at large throughout the entire proposed district, the two receiving the greatest number of votes shall be elected for terms of six years each, the two receiving the next greatest number of votes, for terms of four years each, the two receiving the next greatest number of votes, for terms of two years each. If the trustees are elected in any manner other than at large throughout the entire proposed district, then the trustees elected shall determine by lot the two who shall serve for six years, the two who shall serve for four years and the two who shall serve for two years. The period of time between the date of the organization election and the date of the first regular election of the junior college district is considered a full two years in the terms of the directors. Thereafter, all trustees elected shall serve for terms of six years each.

"2. Candidates for the office of trustee shall be citizens of the United States, at least thirty years of age who have been resident taxpayers of the proposed district for at least one whole year preceding the election and if trustees are elected other than at large they shall be resident taxpayers of those election districts for at least one whole year next preceding the election. All candidates for the first board of a district shall file their declarations of candidacy with the state board of education at least thirty days prior to the date of the organization election."

Plaintiffs seek to apply strictly the "one man, one vote" principle to the election of all trustees of the defendant district (which we shall refer to as the "district"). That district is composed of eight school districts, and includes parts of Jackson, Clay, Cass and Platte Counties, for a total area of about 400 square miles. Since we are dealing only with the pleadings and a stipu-

lation, we are limited in the facts which we may consider. Plaintiffs have, in their brief, gone somewhat outside the allegations of their first amended petition. A "Stipulation and Statement of Case" filed here under our Rule 82.13 adds little more; it eliminates one pleaded issue, states that the defendant district was organized on June 5, 1964, under Chapter 178, and that it has since maintained a junior college, offering 13th and 14th year courses; it lists in an exhibit the respective enumeration figures. Much of the statement of the case consists of a recital of the controversial legal contentions. It is stated that the latest "school enumeration" of the Kansas City School District was 123,754 and that the total school enumeration of the remaining seven school districts in the defendant district was 84,252. Thus, the enumeration of the Kansas City District is 59.49% of the total. It is also alleged that three trustees were elected from the Kansas City District and three from the remainder of the defendant district. Further allegations of the petition are, in substance: that the trustees exercise legislative and administrative functions, including "the levying of taxes, preparation of an annual budget, establishing of policies and procedures for the government of the district and otherwise functioning as the legislative and policy making body of the district;" that plaintiffs are denied the equal protection guaranteed by the 14th Amendment to the United States Constitution and by Article I, § 2 of the Missouri Constitution, by virtue of the dilution of their votes under the formula of § 178.820, and that this constitutes an invidious discrimination against them and against the other taxpayers and voters of the Kansas City School District; that their representation should be determined by population, and not by school enumeration; that the votes of those voters in the other school districts are weighted "almost two times;" that defendant district is not a body representative of the people of the district, and that plaintiffs' votes have been "debased." Plaintiffs pray a declaration that those parts of § 178.820 providing the for-

mula for electing trustees and § 178.840 (which provides more specifically for the details of elections) are unconstitutional and that broad injunctions shall issue, essentially stopping further elections until a proper reapportionment is made, either by legislation or by the court.

Motions to dismiss were filed, one by defendant Anderson separately, and one by the other defendants jointly. These challenged the validity of this suit as a proper class action against other junior college districts, and alleged that the petition failed to state a claim upon which relief could be granted. On December 2, 1966, the court entered an order sustaining both motions to dismiss but allowed plaintiffs 10 days to plead further; plaintiffs then filed a "Motion for Rehearing or New Trial" which was overruled. They filed no further amendment. The court thereupon denied leave to plaintiffs to dismiss Count I (the only part involved here) without prejudice, noted that plaintiffs had failed to plead further, and entered final judgment dismissing plaintiffs' petition and cause of action with prejudice. Appeal was duly taken.

While we are furnished with rather meager facts, it does appear that the defendant district was organized under Chapter 178, and that the Kansas City School District has, under the statutory formula, elected three of the six trustees. The record further shows, as already indicated, that the Kansas City School District contains 59.49% of the "school enumeration." That term is described in § 167.011 as a yearly (required) enumeration of all persons in a school district between the ages of six and twenty, resident within the district. The stipulation shows the enumerations of the seven separate school districts other than the Kansas City District; these vary from 2749 to 23,865.

The issue is simply whether our statutory formula contained in § 178.820 is a violation of the equal protection provided by the federal and state constitutions. Plaintiffs argue that their votes are diluted to the extent that the voters in other districts (40.51%) elect one half of the trustees while their own district (59.49%) elects only the other half.

We shall spend no time in reviewing those cases which hold that the districts as apportioned for the election of members of state legislatures must be fixed on a one man, one vote principle, with substantial equality for the votes of all. Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed. 2d 506; Lucas v. Forty-Fourth General Assembly of State of Colo., 377 U.S. 713, 84 S.Ct. 1459, 12 L.Ed.2d 632. The principle has also been applied to state-wide primary elections. Gray v. Sanders, 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821, and to the apportionment of congressional districts. Wesberry v. Sanders, 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481. We pass those cases for a discussion of others which come closer to our problem.

In Avery v. Midland County, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (April 1, 1968), the court held that this requirement was applicable to the election of the members of a County Commissioners Court in Texas. Four members were elected from districts (one by each) and one at large. One district had a population of 67,906; the others 852, 414 and 828. The disproportion was thus enormous. The County Commissioners were found to have these powers: to appoint various officials, let contracts, build roads and bridges, administer welfare funds, supervise and regulate elections, fix the county tax rates, adopt the budget, operate all county institutions, fix the boundaries of school districts, fix the boundaries of its own electoral districts, act as a board of equalization on all county tax assessments, and issue county bonds. The court also had authority to construct and operate an airport and libraries and to control public housing. The Texas Supreme Court held that the existing districts were improperly created, but that other elements besides population could be considered. The opinion of the United States Supreme Court seems to have recognized

clearly that this body was the *"general governing body"* of the county, and it quoted from a commentary on the Texas Statutes to that effect. The court stated that the Commissioners Court had both legislative and administrative functions, but that it could hardly be classified according to "civics texts;" that, however, it was representative of "most of the general governing bodies of American cities, counties, towns and villages." Many facets of its powers and duties were recited to corroborate this conclusion. Specifically, the court held, at 88 S.Ct. 1. c. 1120, 20 L.Ed. 2d 1. c. 53, and we quote: "We hold today only that the Constitution permits no substantial variation from equal population in drawing districts for units of local government having general governmental powers over the entire geographic area served by the body." It would, of course, be futile to discuss the three dissenting opinions.

We next discuss the case of Sailors v. Board of Education, 387 U.S. 105, 87 S.Ct. 1549, 18 L.Ed.2d 650; however, we shall begin with the decision of the Three Judge District Court shown at 254 F.Supp. 17, 28. There the members of a 5-member County Board of Education were elected by delegates (one) from each of 39 local school districts in the county. The County Board had the power to transfer local districts (or parts of districts) or essentially to annex and de-annex; it appointed the county superintendent; it levied school taxes, made and adopted the budget, conducted the school census, acted as consultant to the various districts, and conducted special education programs. There were 39 local districts; one of these contained 55.6% of the total county population. The greatest population disparity between districts was approximately 200–1, but each local district elected one delegate to the assembly which, in turn, elected the county board. The majority of the District Court held: that the courts are not required to review the apportionment of every "board and agency of the several states, cities, villages, counties, parishes, townships, metropolitan districts, and all other such policy and decision making bodies which are in existence for the purpose of carrying out the intent of the legislatures which authorize their creation;" that the proper apportionment of such bodies should be left to the action of the legislatures, which are now required to be properly apportioned themselves.

The opinion of the Supreme Court on appeal is shown at 387 U.S. 105, 87 S.Ct. 1549, 18 L.Ed.2d 650. The court noted that the members of the local school boards were elected by the people (concerning which no question was raised) and that these boards, as stated, elected one delegate each to an assembly which elected the county board. As we have already noted, the local districts varied immensely in population (and in the school census). The court reiterated its previous view (*Sims*, supra) that local political subdivisions and boards are created as convenient agencies to assist in carrying out such of the state functions as may be entrusted to them, and that the extent of their respective powers is a matter resting in the absolute discretion of the state. It further held: that this method of choosing the members of the county board, which it specifically described as of "non-legislative character," was not offensive to constitutional requirements, and that much in government consists of the "science of experiment" and the exercise of a sound discretion; also, that the county board performed "essentially administrative functions," which were not legislative "in the classical sense." While the court certainly considered the method by which the board was selected, the opinion seems, in our view, to be largely founded upon its ruling that the functions of the board were "essentially administrative" and not legislative. We shall refer again to this feature later, as applied to the present case.

The above cases are the only ones of the Supreme Court which really seem at all applicable here. Plaintiffs cite and discuss federal and state cases which apply the requirement of equal protection on

the one man, one vote theory to city governing bodies. Ellis v. Mayor and City Council of Baltimore, CA 4, 352 F.2d 123; Davis v. Dusch, CA 4, 361 F.2d 495; Thayer v. Garraghan, 279 N.Y.S.2d 441; Seaman v. Fedourich, 16 N.Y.2d 94, 262 N.Y.S.2d 444, 209 N.E.2d 778; and our own case of Armentrout et al. v. Schooler et al., Mo., 409 S.W.2d 138. We are not concerned here with these cases for they concern only "local legislative bodies exercising general governmental powers at the municipal level" (*Seaman*, supra). Counsel also cites cases dealing similarly with elections of County or Town Boards of Supervisors. Bianchi et al. v. Griffing, D.C.N.Y., 238 F.Supp. 997; Dyer v. Rich, D.C.Miss., 259 F.Supp. 741; Bailey v. Jones et al., 81 S.D. 617, 139 N.W.2d 385; State ex rel. Sonneborn v. Sylvester, 26 Wis.2d 43, 132 N.W.2d 249; Lodico v. Board of Supervisors, D.C.N.Y., 256 F.Supp. 442; Martinolich v. Dean, D.C.Miss., 256 F.Supp. 612. These cases were all decided on the theory declared in *Avery*, namely, that the board, court or body involved was one *exercising general governmental functions.* The present case is distinguishable upon its facts, even if we were otherwise bound by such decisions. Counsel have also cited four cases which supposedly apply the rule to school board elections. They are: Strickland v. Burns, D.C.Tenn., 256 F.Supp. 824; Meyer v. Campbell, Iowa, 152 N.W.2d 617; Delozier et al. v. Tyrone Area School Board, D.C.Pa., 247 F.Supp. 30; Pitts v. Kunsman, D.C.Pa., 251 F.Supp. 962. In the first place, we are not bound by any of these decisions; in addition, we are not impressed with the logic employed. In Strickland, the majority of the court apparently made no effort to distinguish between school districts and local bodies having general governmental powers and functions, but applied the same broad brush to all; a county school board was involved. In *Meyer* a county board was again involved; the element of population had been totally disregarded and the districts were specifically based on geographical area or size; moreover, the court there, in our

view, misconstrued the opinion in *Sailors* by considering that it constituted authority for a requirement that in all elections of members of a local public body (if the positions are not appointive) there must be an equal apportionment on a population basis, regardless of the nature and extent of the functions and powers of the body. Delozier again failed to distinguish between the functions of school boards and bodies with general governmental powers. *Pitts*, supra, merely held that the attempted mode of election ignored a state statute of Pennsylvania. And see 3 Cir., 363 F.2d 841 where the order was stayed in part by the Court of Appeals. All of these four cases, except *Meyer*, were decided before the decision in *Sailors*.

A school district, unlike a municipal corporation (city or county) is an instrumentality of the state created for one single purpose and with one single function,—education. State ex rel. Carrollton School Dist. v. Gordon, 231 Mo. 547, 133 S.W. 44; Community Fire Protec. Dist., etc. v. Board of Education, Mo.App., 315 S.W.2d 873. It is truly a special purpose unit of government. In an article by Prof. Jack B. Weinstein in 65 Columbia Law Review 21 (1965) there appears a thorough discussion of the reapportionment decisions as they affect counties and other forms of municipal government. The article was cited in a note to the dissenting opinion of Mr. Justice Harlan in Avery v. Midland County, 88 S.Ct. 1114, 20 L.Ed. 2d at loc. cit. 58. The author's conclusion is that it is doubtful if the one man, one vote principle should be applied to *special purpose* units of local government which have limited purposes and functions, and that the legislatures should have much freedom in creating such units, whether elective or appointive.

The defendant district may only levy taxes to the extent specifically prescribed by statute, except by a vote of the people; it may not incur indebtedness and issue bonds except by a vote of the people. It provides buildings, hires teachers and em-

ployees generally, makes rules and regulations for governing the students, and administers the business of the 2-year junior college; it may, when necessary, acquire property by condemnation, as most other public bodies may do, including levee districts, fire protection districts and drainage districts. The State Board of Education has supervisory control over the defendant district and all other junior college districts, § 178.780. That Board establishes the "role" of all junior colleges, administers the "state financial support program," formulates uniform policies on "budgeting, record keeping and student accounting," establishes entrance requirements and "uniform curricular offerings," is responsible for all "accreditation," and it is required to "supervise the junior college districts." A junior college district, under our plan, has no power to do the multitude of things which a city or a county may do under its broad delegation of powers and its inherent powers.

■ In this situation we are not bound by any precedent. We hold that the defendant district is essentially an administrative body created by the legislature for the sole and special purpose of conducting a 2-year college institution, and that it is *not* a "unit of local government having general governmental powers over the entire geographic area served by the body." *Avery*, supra. We further hold that the district has no substantial legislative functions or powers, a matter which has definitely been considered as meaningful in *Sailors*, supra, and in Avery at 88 S.Ct. 1114, 20 L.Ed.2d loc. cit. 53, 54. In *Sailors* the court said, 387 U.S. loc. cit. 110, 87 S.Ct. loc. cit., 1553: "We do not have that question here, as the County Board of Education performs essentially administrative functions; and while they are important, they are not legislative in the classical sense." It appears to us that the non-legislative character of the board in Sailors was the determining factor. In the present case the legislature and *the people* have retained all essential legislative powers. It

would certainly seem that the true nature and character of a board's powers would furnish a more substantive test than would the procedure used in its selection, even where some form of election is involved.

We thus hold that the one man, one vote principle does not properly apply to such a body as the defendant district; we further hold that §§ 178.820 and 178.840 are valid both under the 14th Amendment to the United States Constitution and under § 2 of Art. I of the Missouri Constitution. In this view it is immaterial whether the trustees are elected on the basis of population or "school enumeration." We may note here, however, that the yearly school enumeration does, in all probability, furnish a more accurate guide than does an outdated federal census. We also note, though the matter is not decisive here, the elasticity allowed in § 178.820 to the larger local districts in the election of trustees. The Kansas City District with 59.49% of the school enumeration elects three trustees; if the enumeration exceeds 66⅔% it will elect four. This method is a far cry from the malapportionments shown in the decided cases.

If, as indicated in *Sailors*, the states should be allowed to "experiment" in their political and governmental processes (387 U.S. loc. cit. 109, 87 S.Ct. 1549), and if much is to be left to the discretion of the states (*Sailors*, again), we fail to see how the method provided here by the Missouri legislature may be deemed invalid. The judgment dismissing the first amended petition and the cause with prejudice is affirmed.

All concur except SEILER, J., who dissents in separate dissenting opinion filed.

### Dissenting Opinion

SEILER, Judge.

I respectfully dissent and adopt as my dissent the opinion prepared by Judge Houser, Commissioner in Division One. His opinion (without setting it out in

quotation marks and after removal of those portions which would repeat the facts set forth in the majority opinion) reads as follows:

The junior college district is a body corporate and a subdivision of the state, organized under and possessing the powers, functions and duties as prescribed in §§ 178.770 through 178.890, V.A.M.S. The district was organized June 5, 1964 pursuant to an election held May 26, 1964. Its boundaries include parts of Jackson, Clay, Cass and Platte Counties for a total of 400 square miles. The junior college district comprises Kansas City School District No. 33, Center School District No. 58, and six other school districts (Hickman Mills, Raytown, Grandview, Lee's Summit, Belton and North Kansas City). Here are the enumeration figures for the junior college district for the years shown:

| Component School District | 1963–64 | 1964–65 | 1965–66 | 1966–67 |
|---|---|---|---|---|
| #33 Kansas City | 112,815 | 121,292 | 123,388 | 123,754 |
| #58 Center | 6,215 | 6,666 | 6,903 | 7,431 |
| R–VII Lee's Summit | 5,475 | 6,148 | 6,482 | 6,875 |
| C–1 Hickman Mills | 10,553 | 13,838 | 15,175 | 15,634 |
| C–2 Raytown | 16,466 | 19,992 | 21,599 | 21,202 |
| C–4 Grandview | 5,117 | 5,788 | 6,151 | 6,496 |
| #74 N. Kansas City (Clay) | 18,662 | 21,103 | 22,633 | 23,865 |
| #124 Belton (Cass) | 2,205 | 2,443 | 2,628 | 2,749 |
| | 177,508 | 197,270 | 204,959 | 208,006 |
| #33 Kansas City | 63.55% | 61.48% | 60.20% | 59.49% |
| Other | 36.45% | 38.52% | 39.80% | 40.51% |

The enumeration figures for all of the junior college districts in the state, showing representation of boards of all junior college districts follow:

| District | Total District Enumeration | Largest Component School District Enumeration | Directors | Percentage of Directors | Percentage of Enumeration |
|---|---|---|---|---|---|
| St. Louis-St. Louis Co. | 336,277 | 153,656 | 2 | 33.3% | 45.7% |
| Jasper Co. | 20,954 | 10,224 | 2 | 33.3% | 48.8% |
| Three Rivers | 18,005 | 6,688 | 2 | 33.3% | 37.0% |
| Sedalia | 8,141 | 5,248 | 3 | 50.0% | 64.4% |
| Mo. Western | 28,231 | 22,619 | 4 | 66.7% | 80.0% |
| K. C. Mo. | 177,508 | 112,815 | 3 | 50.0% | 63.6% |
| Newton-McDonald | | (At large) | | | |
| Jefferson Co. | | (At large) | | | |
| Mineral Area | | (At large) | | | |

◆

At the present time three of the trustees on the board of defendant junior college district were elected from Kansas City School District No. 33. The other three

trustees were elected from the remainder of the junior college district.

In Armentrout v. Schooler, Mo.Sup., 409 S.W.2d 138, we extended to seats on a city council the principle that seats in the legislative branch of the state government must be apportioned substantially on the basis of population. In applying the principles of Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506; Gray v. Sanders, 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed. 2d 821, and Wesberry v. Sanders, 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481 et al., to that local organ of government we considered that the Fourteenth Amendment to the federal constitution applies not only to the state but also to every creature of the state to which the latter has delegated powers of government, and reasoned that an elected city council, primarily a legislative body to which broad legislative powers and governmental functions of a general nature have been delegated as an agency, arm or instrumentality of the state, must as a matter of logic be governed in its composition by the same principles applicable to its creator; and that therefore voters selecting representatives to sit on a municipal legislative body are entitled to the same equal protection and rights in casting such votes as those enjoyed by voters on the state level voting on candidates for the offices of representative and senator in state and national legislative bodies.

Now we are called upon to determine whether as a matter of constitutional right this same principle must be further extended and applied to seats on the board of trustees of a junior college district, which is not primarily a legislative body exercising general governmental functions.[1]

As pointed out in *Armentrout*, the Equal Protection of the Laws Clause of the Fourteenth Amendment applies to the State of Missouri and to every governmental creature of the state to which it has delegated the powers of government. "The State of Missouri may exercise its legislative powers only through a legislative body apportioned on a population basis, and it logically follows that the agency, arm or instrumentality to which the state delegates some of its powers should be governed by the same principle. Seaman v. Fedourich [16 N.Y.2d 94,] 262 N.Y.S.2d 444, l.c. 449, 209 N.E.2d 778, l.c. 782[4]; Brouwer v. Bronkema, No. 1855, Cir.Ct. Kent County, Michigan, September 11, 1964." Armentrout v. Schooler, supra, 409 S.W.2d, l.c. 143. The Wisconsin Supreme Court expressed the same thought in this language: "Since the composition of the legislature must conform to the principle of equal representation, it is logical that the arm or political subdivision of such legislature enacting legislation should be governed by the same principle of equal representation." State ex rel. Sonneborn v. Sylvester, 26 Wis.2d 43, 132 N.W.2d 249, 256. See also Cooper v. Aaron, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5. Sections 2 and 25 of Article I, Constitution of Missouri, 1945, also apply to the State and to those of its agencies, arms and instrumentalities to which the State has delegated powers of government.

School districts, including junior college districts, "* * * are public corporations,

---

1. A junior college district has the power to sue and be sued, to levy and collect taxes within the limitations of §§ 178.770–178.-890, V.A.M.S., to issue bonds and exercise the same corporate powers as common and six-director school districts, other than urban districts, except as otherwise provided by law, § 178.770; to provide instruction, classes, school or schools, determine per capita cost of college courses, collect approved nonresident tuition fees and charges to resident pupils, § 178.850; to conduct hearings and suspend or expel pupils on disciplinary charges, § 167.161; to make rules and regulations for the organization, grading and government of the district, § 171.011; to let contracts, employ and dismiss teachers and approve bills, § 178.830; to appoint employees and define and assign their powers and duties and fix their compensation, § 178.860; to pass on annexation of school districts to the junior college district, § 162.441, and to acquire real property by condemnation, § 177.041.

form an integral part of the state, and constitute that arm or instrumentality thereof discharging the constitutionally intrusted governmental function of imparting knowledge and intelligence to the youth of the state that the rights and liberties of the people be preserved." School Dist. of Oakland v. School Dist. of Joplin, 340 Mo. 779, 102 S.W.2d 909, 910. A junior college district is a creature, a subdivision of the state. § 178.770, V.A.M.S. Its board of trustees exercises the powers delegated to it by the General Assembly. While these powers are primarily administrative in nature, limited by law and relate to the special purpose of education, they include legislative powers of vital importance to the state materially and substantially affecting the lives, property and welfare of the citizenry. The General Assembly could have provided for the exercise of these powers by officials chosen by appointment, or by a combination of the appointive and elective methods of selection, but it did not do so. The General Assembly provided that the officials in whose hands these powers of government are entrusted shall be chosen by a vote of the people. The trustees represent the people of the district and reflect their views. Having been given the right to select their representatives to sit on junior college district boards, the people are entitled to the same protection in the exercise of their suffrage as that enjoyed by voters on the state level voting for their senators and representatives, or voters on the municipal level voting for their city councilmen, without dilution or diminution of the weight of their individual votes because of the mere fact that they happen to reside in a certain school district.

This logical conclusion has the support of substantial and respected authority. The difference between this case and Reynolds v. Sims, supra, is one of degree and not of principle. In addition to the cases and legal scholars upon which we relied in Armentrout, supra, 409 S.W.2d, 1.c. 142, 143, several jurisdictions have reached the same result in cases involving the election of school officials.

In Meyer v. Campbell, Iowa Sup. (1967), 152 N.W.2d 617, it was held that county boards of education, selected by popular vote, are direct representatives of the people and that the state and federal constitutions require their election on an equal representation basis. After analyzing Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663, Gray v. Sanders, Wesberry v. Sanders, and Reynolds v. Sims, supra, the Iowa Supreme Court considered that "* * * there is nothing in these cases that indicates that the fundamental principle that all men are created equal, and thus accorded an equal vote, should not apply similarly to other inferior bodies that possess legislative power, when the method of their selection is by the elective process. Hanlon v. Towey, 274 Minn. 187, 142 N.W.2d 741 (1966), and citations; State ex rel. Sonneborn v. Sylvester, 26 Wis.2d 43, 132 N.W.2d 249. Since it is a basic principle of representative government that the weight of a person's vote does not depend on geographical boundaries, it follows logically that any inferior *elective* body, that is representative of the people, be representative of all the people equally. Seaman v. Fedourich, 16 N.Y.2d 94, 262 N.Y.S.2d 444, 209 N.E.2d 778; Armentrout v. Schooler (Mo.), 409 S.W.2d 138 (1966); Bianchi v. Griffing [D.C., 238 F.Supp. 997]. * * * Since our own legislature chose to make members of the board elective rather than appointive, it intended that these members represent the people and not geographical land areas. Each voter similarly situated is entitled to equal representation." 152 N.W.2d, 1.c. 621. After determining that the primary functions of county boards of education were administrative the court concluded that substantial legislative functions were delegated to them "sufficient to require member selection under the one man-one vote principle announced in Reynolds v. Sims, * * * when the legislature also provided that the mem-

ber be chosen by election." Ibid, 1.c. 622 [8].

In Strickland v. Burns, M.D.Tenn. (1966), 256 F.Supp. 824, it was held that a Tennessee statute providing that the School Commission be composed of 11 members, one commissioner to be elected from each of 11 school zones (which were unequally populated), violated the Fourteenth Amendment. The court stated that "The plaintiffs herein have established that their individual votes in electing members of the Rutherford County School Commission have been substantially diluted by the provisions of the Act complained of. They have established that the only basis for such dilution is their place of residence. No showing has been made by defendants that would justify the discrimination.

"We hold, therefore, that the discrimination existing is invidious. Since we can find no basis for applying the 'one man, one vote' rule to the congeries of powers possessed by the Legislature itself and at the same time denying its application to a subordinate body simply because it possesses a fractional part of those powers, so long at least as the fractional part cannot be said to be insignificant or unimportant, we must also hold that the apportionment provisions of the Act complained of are void as violative of rights secured by the Equal Protection Clause of the Fourteenth Amendment." 256 F.Supp., 1.c. 827.

In Delozier v. Tyrone Area School Board, W.D.Pa. (1965), 247 F.Supp. 30, it was held that the directors of the board of a consolidated school district, elected by popular vote, are subject to the principle of equal representation laid down in Reynolds v. Sims, supra; that a local school district, being the arm or agency of the state to administer its educational system, is not immune from the constitutional requirement. Noting that the principle had been applied to various elective bodies, local, municipal, county and school districts,

"where that body is elective and exercises legislative power," and citing State ex rel. Sonneborn v. Sylvester, 26 Wis.2d 43, 132 N.W.2d 249; Ellis v. Mayor and City Council of Baltimore, D.C.Md. (1964), 234 F.Supp. 945; Brouwer v. Bronkema, Circ. Ct. Kent Co. Mich. (1964); Bianchi v. Griffing, E.D.N.Y. (1963–1965), 217 F. Supp. 166; 238 F.Supp. 997; and Damon v. Lauderdale County Election Commissioners, (Civil Action 1197–E) U.S.D.C., S.D. Miss. (1964), in support of its ruling, the court struck down the plan before the court as violative of the Equal Protection of the Laws Clause of the Fourteenth Amendment, wherein one representative would represent several times the voting power of another representative.

Pitts v. Kunsman, E.D.Pa. (1966), 251 F.Supp. 962, a case involving an administrative unit in a school system, recognized the principle that when representatives are elected from individual districts each district under the Fourteenth Amendment, "must then have relatively the same population so as to obtain as nearly as possible equal weight for the franchise of each citizen. [Citing Reynolds v. Sims, Gray v. Sanders, Baker v. Carr, and Delozier v. Tyrone Area School Board.]"

Respondents deny the applicability or pertinence of these decisions, claiming that they either do not make or do not give proper consideration to the distinction between local government units exercising broad, general governmental functions through bodies whose functions are primarily legislative in nature, and local government units essentially administrative in character, organized for a special limited purpose, and they point out that we carefully made that distinction in *Armentrout*. The argument is that these special purpose bodies "exercise far fewer powers than do general purpose units of government and, therefore, their governing officials, even though they may be elected, are more concerned with administering the special purpose for which such governmental units

exist than they are with representing and advocating the interests of their constituents"; that the functions of a junior college district are limited and circumscribed; that the state board of education has supervisory control over such districts; that the duties of the trustees are essentially administrative and "not legislative in the classical sense"; that the trustees are elected "not to serve constituencies and advocate their interests in enacting legislation and laws which will be applicable to all persons who live in the district, but to serve as administrators of the district for the limited purpose of providing a two-year college education." Granting that all of this is true, it does not militate against nor render inapplicable the principle of equal representation. The board of trustees of a junior college district is a representative body. The right in question is the elector's right to an equal vote in the election of members of a representative body, to which has been delegated a number of legislative powers of vital importance to the State which materially and substantially affect the people of the district.[1] The fact that some or most of the functions of the trustees are administrative in nature and that the district is subject to supervisory control by the state board of education does not permit the abridgment of the rights of the electors to equality in casting their votes for members of the board.

The same argument was made as to a county board of supervisors and answered as follows in State ex rel. Sonneborn v. Sylvester, supra, 132 N.W.2d, l.c. 256: "The fact the county also performs administrative functions and is somewhat responsive or subject to the legislature does not justify the denial of the application of the equal-representation principle to county boards. Solely administrative duties would not call forth the application of the principle, nor do these administrative duties or the limited legislative powers destroy the fact that realistically the county today

is a unit of government with vital powers over the lives of its residents. Those powers, which it may now exercise or may be given as a legislative body, require in our form of government the principle of equal representation be applied." In Meyer v. Campbell, supra, the Supreme Court of Iowa, adverting to Gray v. Sanders and Reynolds v. Sims, said 152 N.W.2d, l.c. 624: "It now seems to us the principles which gave rise to those decisions must be applied to our present method of selection of members of the county board of education. Where the election of those members is required, and where as here the legislature provides for the election of these representatives of the people whether their function be considered legislative, quasi-legislative, or primarily administrative, their election must be made on a population basis, not upon area."

The fact that the governmental unit involved is on the local level and is smaller in size and scope than a governmental body operating on the state level does not make the trustees any less representative of the views of the citizens. As said by Judge Johnson in his dissenting opinion in a case involving county boards of revenue, "To the contrary, rather than limit the principles of *Reynolds,* as the majority opinion does, it would seem that these principles might well have their most meaningful application at the local level." Moody v. Flowers, M.D.Ala. (1966), 256 F.Supp. 195, 201.

Respondents further urge that if the principle of representation were to be applied to all local administrative units throughout the United States, such as fire, sewer, water, drainage, and metropolitan districts, and port authorities, "an extremely chaotic situation would be created thereby." By this decision we are not determining that every unit of local government must be organized on this principle. We are holding that the principle of representation applies to the members of the board of trustees of a junior college dis-

trict to whom are delegated a substantial number of material and important legislative powers, where the board is elected by the vote of the people. Further extension of this principle must be made, if at all, on a case-by-case basis, depending upon the facts in each case. The granting or withholding of constitutional rights, however cannot ever be made to depend upon the time, trouble or inconvenience involved, or whether "chaotic" changes upsetting traditional thought patterns will ensue.

After the argument of this case in division but before its submission en banc the United States Supreme Court handed down Avery v. Midland County, Texas, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 extending the principle of representation to the selection of the Midland County, Texas Commissioners Court, which, although the general governing body of the county, has only limited powers. It was stated as beyond question that a state's political subdivisions must comply with the Fourteenth Amendment. The court broadly held that the Fourteenth Amendment forbids the election of local government officials from districts of disparate size; that "when the State delegates lawmaking power to local government and provides for the election of local officials from districts specified by statute, ordinance or local charter, it must insure that those qualified to vote have the right to an equally effective voice in the election process. If voters residing in oversize districts are denied their constitutional right to participate in the election of state legislators, precisely the same kind of deprivation occurs when the members of a city council, *school board,* or county governing board are elected from districts of substantially unequal population." (Our italics.) The court turned aside the legislative-administrative argument, demonstrating that while the county commissioners court's legislative powers are negligible, apparently concentrated on the subject of rural roads, the court does have power to make many decisions having a broad range of impacts on the citizenry generally. While not denying the right of the states to devise mechanisms of local government with varying populations in residential districts, as where the governing body's functions are essentially administrative in nature or where the scheme is one of at-large voting, the court insisted upon the "requirement that units with general governmental powers over an entire geographic area not be apportioned among single-member districts of substantially unequal population." This latest expression of the United States Supreme Court on the subject is strong and compelling authority in support of the conclusion we have reached.

Respondents' reliance upon Sailors v. Board of Education, W.D.Mich. (1966), 254 F.Supp. 17, aff. 387 U.S. 105, 87 S.Ct. 1549, 18 L.Ed.2d 650, is misplaced. The issue was not framed in that case. In Michigan the five-member county board of education is chosen not by the electors of the county but by delegates from the local school boards. The qualified school electors elect the local boards. A majority of the three-judge federal district court panel held that the rule of equal representation was inapplicable and dismissed the complaint. The United States Supreme Court affirmed, but gave no definitive answer to the question now before us. Justice Douglas pointed out that the Michigan system for selecting members of the county school board is basically appointive rather than elective, stating, "If we assume *arguendo* that where a State provides for an election of a local official or agency—whether administrative, legislative, or judicial—the requirements of Gray v. Sanders and Reynolds v. Sims must be met, no question of that character is presented. * * * Since the choice of members of the county school board did not involve an election and since none was required for these nonlegislative offices, the principle of 'one man-one vote' has no relevancy."

The Attorney General argues that the government and control of a junior college district resides in and is exercised by the voters and the legislature; that "[t]he representative body which holds the key governmental powers in junior college districts is the state legislature. If the appellants desire changes to be made in these powers and there [sic] exercise, the appropriate place of redress is the state legislature." We do not agree. The government and control of a junior college district resides in and is exercised by the board of trustees, under the limitations and controls provided by law. The board of trustees is the representative body which holds the "key governmental powers." Under the equality clauses of both federal and state constitutions the trustees vested with these powers must be directly representative of the people of the district. Appellants, whose constitutional rights have been violated, are not required to resort to the General Assembly for relief. Any person whose right to vote is impaired has standing to sue in the courts. Gray v. Sanders, 372 U.S. 368, 375, 83 S.Ct. 801, 9 L.Ed.2d 821.

The district contends, however, that the statutory formula for the allocation of trustees is based upon school enumeration, not population, and "therefore, the 'one man-one vote' principle which relates to population is not applicable." The argument is that school enumeration refers to persons who are minors of school age and has nothing whatever to do with population or voters; that there is no reasonable connection or mathematical relationship between the number of students of school age and the number of people or voters resident within a school district, and that the General Assembly had the right in its discretion to use school enumeration as the basis for allocating trustees among the component school districts.

This contention cannot be sustained. The principle of equal representation is fully applicable in the instant situation notwithstanding the statutory formula is based upon school enumeration rather than population. In either event the elected trustees must be apportioned on the basis of population—total population—and not on the basis of any artifical classification that necessarily abridges the principle of equal representation of *the people,* such as representation according to the number of trees or acres,[2] or the number of persons in the district between the ages of six and twenty years. "Population is, of necessity, the starting point for consideration and the controlling criterion for judgment in legislative apportionment controversies." Reynolds v. Sims, supra, 377 U.S., l.c. 567, 84 S.Ct., l.c., 1384, 12 L.Ed.2d l.c. 530.

The allegation of a population disparity of the proportion alleged by plaintiffs states a claim of invidious discrimination against the voters resident in the larger district, entitling them, on proof or admssion of such a population differential, to a judgment invalidating the statute authorizing election of representatives from such unequally populated districts, whether the statutory formula is based upon population, school enumeration or any other factor. This is for the reason that every elector in the junior college district is entitled to protection against the dilution of the weight of his individual vote in comparison with the weight accorded the votes of others by reason of a general population differential between his school district and other more favored districts, and indeed is entitled to be protected against the diminishing of the weight of his vote by reason of a population differential as to persons between the ages of six and twenty in different districts.

The circuit court therefore erred in sustaining and should have overruled the motions to dismiss the petition.

2. Reynolds v. Sims, supra, 377 U.S., 1, c. 562, 580, 84 S.Ct. 1362.