Harry PITTS et al.

v.

Elvin H. KUNSMAN et al.

Civ. A. No. 39755.

United States District Court
E. D. Pennsylvania.

March 16, 1966.

John E. Lavelle, Noonan, Pace & Lavelle, Ashland, Pa., for plaintiffs.

Arlin M. Adams, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for defendants.

DAVIS, District Judge.

The plaintiffs, duly elected members of the School Board of the Borough of Girardville, Schuylkill County, Pennsylvania, bring this action for injunctive relief against the County Superintendent of Schools of Schuylkill County and the School Directors of the Boroughs of Ashland, Frackville, and Gordon, the township of Butler and the School District of Ringtown-Union, all of Schuylkill County, and against the school directors of the Township of Conyngham, Columbia County, Pennsylvania. Jurisdiction is founded on the alleged unconstitutional application of a state statute in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. The salient facts are not in dispute.

Pursuant to Pa.Stat.Ann. tit. 24 § 2–202 et seq., the Schuylkill County Board of School Directors submitted to the State Council of Basic Education a plan for the reorganization of the school districts of the County. The State Council approved Administrative Unit No. 63–9 which is comprised of all the school districts involved in this litigation.

In the summer of 1963, the Pennsylvania General Assembly passed the School Reorganization Act, Pa.Stat.Ann. tit. 24 §§ 2–202 et seq., which sets forth various guidelines and procedures for the consolidation and merger of many of the smaller school districts throughout the Commonwealth. In accordance with that statute, the defendant Schuylkill County Superintendent of Schools called into convention all the incumbent school directors of the districts included in Administrative Unit No. 63–9 for the purpose of electing an interim operating committee to be composed of nine of their number. The Act states in § 3–303.1(b) that "in selecting [the members of] the interim operating committee, the incumbent school directors shall take into consideration the principle of proportionate representation according to population." Once established, this committee then has the full powers of a school board and is to remain in existence until popular elections are held for new school directors beginning in November 1967.

The convention of school directors elected two directors each from the School Districts of Frackville, Ashland, and Butler, and one each from Gordon, Conyngham, and Ringtown-Union. It chose no one from the Borough of Girardville.

In this action, the plaintiffs, who are the incumbent school directors from Girardville, assert that the failure to elect someone from their district was a violation of the provision of the School Reorganization Act quoted above that requires the convention to take into consideration the population factor. They contend further that the statute as applied is an infringement of the Equal Protection Clause of the Fourteenth Amendment in that Girardville is now unrepresented and denied a voice in the educational affairs of Administrative Unit No. 63–9 until at least the fall of

1967 while other districts with smaller populations have one representative and some of the larger ones have two.

The population figures and other relevant data as to representation are as follows:

|  | Population | Percentage of Total Unit Population | Members Elected | Residents per Member |
|---|---|---|---|---|
| Frackville | 5,654 | 26.94 | 2 | 2,827 |
| Ashland | 5,007 | 23.86 | 2 | 2,503 |
| Butler | 3,340 | 15.92 | 2 | 1,670 |
| Girardville | 2,958 | 14.10 | 0 | 0 |
| Ringtown-Union | 2,018 | 9.62 | 1 | 2,018 |
| Conyngham | 1,119 | 5.33 | 1 | 1,119 |
| Gordon | 888 | 4.23 | 1 | 888 |
|  | 20,984 | 100.00 | 9 |  |

## I

■■■ The Court must first of all determine whether or not the Pennsylvania statute requires the election of directors at large or from the various old districts or from regions to be established in order to determine whether the Equal Protection Clause of the Constitution has been violated. There can be no doubt that if at large representation is contemplated, all the representatives may come from one of the old school districts at least for constitutional purposes. In that case, they are not representing their particular area but the unit as a whole, and the vote of each elector would have the same weight as the vote of every other elector regardless of where he resides within the new administrative unit. It is only when the representatives are elected from individual districts that the constitutional mandate of "one man-one vote" comes into operation. Under the Fourteenth Amendment each district must then have relatively the same population so as to obtain as nearly as possible equal weight for the franchise of each citizen. See Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964); Gray v. Sanders, 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821 (1963); Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); Delozier v. Tyrone Area School Board, 247 F.Supp. 30 (W.D.Pa.1965).

Although the School Reorganization Act was the subject of much debate within and without the halls of the General Assembly, the court's research has found no legislative history which clarifies the meaning to be given the particular provision of § 3–303.1(b) relating to proportionate representation on the interim operating committee. The court must turn to the statute itself.

In order to see this committee in its proper perspective, it seems best to examine the formation and structure of the new permanent school boards which will replace the interim operating committees when the latter pass out of existence. Each new school board shall consist of nine members. The interim operating committee or the new board after its establishment has a choice as to how the new board shall be elected. It may have all members elected at large; it may divide the new administrative unit into three regions with three directors elected from each region; or it may divide it into nine regions with one director from each region. The statute then provides that in the event alternative two or alternative three is chosen, "The boundaries of the regions shall be fixed and established in such manner

that the population of each region shall be as nearly equal as possible and shall be compatible with the boundaries of election districts." Pa.Stat.Ann. tit. 24, § 3–303(b). Thus the legislature has expressed a policy to give the vote of the electors of each region approximately the same weight where the directors are in fact chosen by regions.

The statute however makes no mention of regions in the selection of the interim operating committee. All that it says, is, "in selecting the interim operating committee, the incumbent school directors shall take into consideration the principle of proportionate representation according to population." This provision can only mean proportionate representation according to population on the basis of the old school district boundaries. If new regions disregarding or eradicating the old boundaries were to be set up, the act would certainly have so stated as it did in connection with the new permanent school boards.

Nevertheless, if the act requires exact proportionate representation based on the old school districts, the principle cannot always be effected with the number of directors on the interim operating committee fixed by statute at nine. For example, what happens if there were eleven old school districts in the new unit? Obviously, at least two such school districts would be without a representative. What if there were nine old districts, and three of them had two-thirds of the population of the new unit? Again several school districts would be without representation. These examples can be multiplied, and it becomes quickly apparent that the "one-man, one vote" principle cannot possibly be fully implemented with the districts already fixed and the number of representatives already fixed.

We will not assume that the General Assembly of Pennsylvania intended an impossible or absurd result. We hold, therefore, that the statutory language in question does not require school directors to represent equal fractions of the populous on the basis of the old school district lines, but rather that all the members of the interim operating committee are to represent the administrative unit at large. The legislature intended only that the convention of old school directors "shall" choose the members of the interim operating committee from the directors of the old districts with the populations of those districts in mind but that once chosen, the members were to represent the unit as a whole. Thus no constitutional guarantee has been infringed.

In addition, it is not at all clear to the court that the Equal Protection clause would apply to the indirectly elected interim operating committee even if the legislature mandated that each member should represent an equal number of the population. The important constitutional consideration is the equality of the weight to be given the vote of each citizen. This is in no way violated if the incumbent school directors are elected according to this principle, and then these directors in turn select a smaller group to take their place without giving every district representation. It is somewhat analogous to committees of the legislature or of Congress which do not contain representatives from every district. This indirect method of election used here does not destroy the concept of equal protection, because the vote of each citizen is still given equal weight in choosing those persons he is in fact called upon to elect.[1] See Reynolds v. Sims, Gray v. Sanders, Baker v. Carr, supra.

Even assuming without deciding that the school board apportionment is state action under the Fourteenth Amendment, we find no violation of the Equal Protection Clause in this case. See Delozier v. Tyrone Area School Board, 247 F.Supp.

[1.] There is no allegation that the convention of incumbent school directors representing the old districts is unconstitutional; or that one old district has an unconstitutional voting advantage over another; or that any citizen's vote is being given more weight than another's.

30 (W.D.Pa.1965); Ellis v. Mayor and City Council of Baltimore, 234 F.Supp. 945 (D.Md.1964).

## II

Since the federal claim was not "plainly wanting in substance," and there is but "one cause of action" based on a federal and a non federal ground with identical underlying facts, the court will exercise its pendent jurisdiction and turn to the question of the defendant's violation of the state statute. Hurn v. Ousler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933); Taussig v. Wellington Fund, Inc., 313 F.2d 472 (3d Cir. 1963).

The statute in § 3–303.1(b) provides that the convention of incumbent school directors "shall take into consideration the principle of proportionate representation according to population." This factor is made compulsory by the word "shall", the permissive word "may" not being used. Yet, as mentioned earlier, these words "shall take into consideration" do not connote an absolute requirement that each director on the interim operating committee represent an equal number of the population. They indicate rather that the legislature did not want all the directors coming from one or two of the old districts and did not want the population factor disregarded. One thing above all is certain: the legislature intended the convention to implement in the selection process the principle of "proportionate representation according to population" as best it could, given stationary boundaries and a fixed number of directors. It certainly did not contemplate that the convention should merely discuss the principle and then cast it aside. Otherwise the statutory provision would serve little or no purpose.

In this instance, the convention did ignore the proportionate population guideline when it passed over the school district of the Borough of Girardville with some 2958 people and gave the school district of Butler Township with 3340 people two representatives and the Borough of Gordon with 888 people one representative. This is not to say that in every situation each old school district must be represented; indeed this would be impossible if there were more than nine old school districts amalgamated. Nor does it mean that each of the nine members of the interim operating committee must have originally represented populations as nearly equal as possible; this would undoubtedly be impossible because of the fixed boundaries of the old sub-divisions. In other cases where two districts might have relatively equal populations, one may have a representative and one may not, but here again, this will not necessarily mean that the statute has been by-passed. All the Act provides is a prohibition against the convention's disregard of the population factor in its selection process. The compliance with the statutory standard will depend on the facts of each particular case, and no detailed rule of general application can be formulated. The number of school districts involved, the population of each district, and even the existence of old school directors from each particular district will always be important factors.

The defendants rely on the provision of § 3.303.1(b), that "[t]he decision of the convention in selecting the interim operating committee shall be final." They argue that this language prevents the court from delving into the methods used by the convention in selecting the interim operating committee. There are two answers to this contention. First of all, it is inconceivable that the legislature here has denied the court the right to enforce a statutory provision which it compels the convention of school directors to obey. The mandate to the incumbent school directors concerning the population factor might easily become a dead letter if not open to judicial scrutiny.

Secondly, the sentence seems to apply rather to the involvement of the State Council of Basic Education and the Court of Quarter Sessions. Under the statutory scheme, the Council has the final

say in approving the merger of the various districts into new administrative units while the court must approve the establishment of any regions for the election of the new permanent school directors. To avoid any question as to the power of the Council in the selection process for the interim operating committee, and also to negate any requirement for formal court approval, the statute explicitly states that the final decision would be with the incumbent school directors. This does not mean that the courts must refrain from scrutinizing the vote of the incumbent school directors if it is contended, as it is here, that they violated the statutory directive. School District of the City of Uniontown et al v. Marclay Union School District, 29 Fayette Legal Journal 24 (1966); Contra, Olinger et al v. Burrell Joint School District et al, C. P. Westmoreland County, No. 688, April Term, 1965.

Although we hold that the Equal Protection Clause has not been violated, it is clear to us that the defendant school directors have ignored the School Reorganization Act under the facts of this case.

### III

Although counsel did not refer to it, the court is not unmindful of the doctrine of abstention which might be applicable here since injunctive relief is requested against officials of a political subdivision of a state and our decision involves the interpretation of a statute embodying significant state policies that no appellate court of Pennsylvania has yet construed.[2] Leiter Minerals v. United States, 352 U.S. 220, 77 S.Ct. 287, 1 L.Ed.2d 267 (1957); Alabama Public Service Commission v. Southern R. Co., 341 U.S. 341, 71 S.Ct. 775, 95 L.Ed. 1016 (1951); Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

■ The doctrine of abstention does not limit the jurisdiction of this court

to decide the questions now before it; it is rather a matter of the court's discretion to abstain from deciding them at this time in the interest of federal-state relations in order to give the state courts the initial opportunity to pass on the state and federal questions involved. Doud v. Hodge, 350 U.S. 485, 487, 76 S.Ct. 491, 100 L.Ed. 577 (1956). On balance, we have decided to exercise our discretion not to abstain. See Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25, 27, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959) (note 2 of Mr. Justice Frankfurter's Opinion).

■ The issue here vitally affects the school children of this section of Schuylkill County, a depressed area in the heart of Pennsylvania's coal region. While realizing the importance of federal-state comity, it is the sincere feeling of this court that the sooner this litigation is resolved, the sooner the interim operating committee can get on with its paramount purpose of improving the educational system of this region. See Baggett v. Bullitt, 377 U.S. 360, 378-379, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964). With the legality of the interim operating committee in doubt, all its actions including its budget are thrown in doubt. The only losers from our invoking the doctrine of absention would be the children of Schuylkill County. This result we shall avoid.

### ORDER

And now, this 16th day of March 1966, the defendants composing the interim operating committee are hereby enjoined until further Order of Court from any action with regard to school affairs of administrative unit 63-9 of Schuylkill County except that which is absolutely necessary.

It is further Ordered that the defendant County Superintendent of Schools of Schuylkill County, Pennsylvania call into convention within 15 days the incumbent school directors within Administrative Unit 63-9.

---

2. However, the statute was found not to have violated the Pennsylvania Constitution in Chartiers Valley Joint Schools v.

Allegheny County Board of School Directors, 418 Pa. 520, 211 A.2d 487 (1965).

It is further Ordered that the several defendant incumbent school directors shall assemble into convention at the call of the defendant County Superintendent of Schools and shall select an interim operating committee. In doing so they "shall take into consideration the principle of proportionate representation according population" in a manner not inconsistent with this Opinion.

It is further Ordered that the defendant County Superintendent of Schools of Schuylkill County shall submit to this Court the results of the election of a new interim operating committee within five days after the election is held. If composition of the new interim operating committee fails to conform to the statute as interpreted by this Court, the Court shall on its own initiative determine the number of representatives to be selected from each of the old districts.