UNITED STATES of America, Plaintiff–Appellee,

Yonkers Branch–National Association For the Advancement of Colored People et al., Plaintiffs–Intervenors–Appellees,

v.

YONKERS BOARD OF EDUCATION; City of Yonkers; and Yonkers Community Development Agency, Defendants–Appellees,

The State of New York, Mario Cuomo, As Governor of the State of New York; The Board of Regents of the State of New York; Martin C. Barell, R. Carlos Carballada, Adelaide L. Battista, Lora Bradley Chodos, Louise P. Matteoni, Edward Meyer, Floyd L. Linton, Salvadore Scafini, Mimi Levin Lieber, Shirley C. Brown, Norma Gluck, Thomas

---

Frey and James McCabe, Sr., in their official capacities as members of the State Board of Regents; The Department of Education of the State of New York and The Urban Development Corporation of the State of New York and Vincent Tese, as Director of the Urban Development Corporation, Added–Defendants,

Valentine Bilcik, Herbert Blum, Ralph Ferraioli, Milton Holst, Robert Mangieri, Andrew J. Natale, Jr., and Nader Sayegh, individually and as members of the Parks, Recreation and Conservation Board of the City of Yonkers, Proposed Defendants–Intervenors–Appellants.

No. 842, Docket 89–6236.

United States Court of Appeals, Second Circuit.

Argued Feb. 28, 1990.

Decided May 2, 1990.

Vivian Shevitz, Brooklyn, N.Y. (Kenneth K. Fisher, Fisher & Fisher, Brooklyn, N.Y., of counsel), for appellant.

Thomas E. Chandler, Atty. Dept. of Justice, Washington, D.C. (James P. Turner, Acting Asst. Atty. Gen., Dennis J. Dimsey, Atty., Dept. of Justice, Washington, D.C., of counsel), for appellee United States of America.

Lawrence W. Thomas, Anderson, Banks, Moore, Curran & Hollis, Mt. Kisco, N.Y. (John H. Dudley, Jr., Butzel Long Gust Klein & Van Zile, Detroit, Mich., of counsel), for appellee School Board.

(Michael H. Sussman, Yonkers, N.Y., for appellees Yonkers Branch–NAACP, on submission.)

Before OAKES, Chief Judge, WALKER, Circuit Judge, and BILLINGS, District Judge.*

OAKES, Chief Judge:

In this appeal, seven members of the Parks, Recreation and Conservation Board of the City of Yonkers ("Parks Board") challenge a judgment dated September 19, 1989, by the United States District Court for the Southern District of New York, Leonard B. Sand, Judge, denying their motion to intervene for purposes of appealing a previous district court order that dedicated certain park land in the City of Yonkers for use as the site of a new junior high school, notwithstanding the state legislature's failure to act upon the de-dedication request. Because we find that the proposed intervenors in their official capacities are not proper parties to intervene, and that in any case the only interests that they may timely seek to assert at this stage of the action were adequately represented by the existing parties, we affirm the district court's denial of their motion.

## BACKGROUND

This action involves yet another aspect of the by-now familiar *Yonkers* litigation. Given the tortuous procedural history of the litigation, we find it necessary to review its relevant stages.

On November 20, 1985, the district court found the City of Yonkers ("the City") and the Yonkers Board of Education ("the Board") liable for the intentional segregation of the Yonkers public schools, in violation of the Fourteenth Amendment, and in the case of the Board, in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d. *See United States v. Yonkers Bd. of Educ.*, 624 F.Supp. 1276, 1376–1545 (S.D.N.Y.1985). Subsequently, the court established a schedule for the remedy phase of the litigation, and directed both the City and the Board to submit proposals. In its plan submitted on April 2, 1986, the Board proposed the construction of a new junior high school to facilitate desegregation. After evidentiary hearings during which the City raised no objection to the construction of the new school, the

district court on May 13, 1986, entered its Order for Desegregation of the Yonkers Public School System, which required, among other things, the construction of a new junior high school. *See United States v. Yonkers Bd. of Educ.*, 635 F.Supp. 1538, 1540–43 (S.D.N.Y.1986). The district court's orders finding the City and the Board liable and ordering remedies for desegregation were affirmed by this court. *See United States v. Yonkers Bd. of Educ.*, 837 F.2d 1181 (2d Cir.1987), *cert. denied*, 486 U.S. 1055, 108 S.Ct. 2821, 100 L.Ed.2d 922 (1988).

While appeal of the two orders was still pending, the City moved to modify the May 13, 1986, order to eliminate the requirement that it provide funding for the new schools. On January 30, 1987, the district court denied the City's motion and ordered that the Board begin planning for construction of the new schools. Pursuant to this order, an architectural study was prepared that evaluated and ranked five proposed sites for the new junior high school. According to the architects, the two most promising sites were in dedicated park land—one in Trevor Park and the other adjacent to it on the Hudson River. After receiving responses from the parties, including objections from the City to the proposed sites, the court-appointed monitor recommended that the City and the Board attempt to agree on one of these two sites for the new junior high school.

On September 16, 1987, the City filed objections to the monitor's report, again contending that the new junior high school was unnecessary. On January 11, 1988, the monitor issued a second report recommending the construction of the new school. On February 3, 1988, the district court approved and adopted the monitor's two reports and recommendations. On March 17, 1988, the district court entered an order requiring the City to fund the design, planning, and construction of the new school, and ordering the City and the Board to "move affirmatively to agree on the selection of either one of the two prime

* Of the District of Vermont, sitting by designation.

sites" for the new junior high school. The court also ordered the City and the Board to notify it within thirty days as to which of the two sites had been agreed upon and as to the steps necessary to ensure acquisition of the site by the City. On August 31, 1988, this court upheld the district court's January 30, 1987, and March 17, 1988, remedial orders. *See United States v. Yonkers Bd. of Educ.*, 856 F.2d 7 (2d Cir.1988).

Pursuant to the district court's March 17, 1988, order, the City selected the Trevor Park site for the new junior high school. In the subsequent months, Sal DeSantis, Commissioner of Parks, Recreation and Conservation, appeared at the monitor's meetings to present his and the Parks Board's opposition to the use of the Trevor Park site. DeSantis and others raised the possibility of rehabilitating an existing high school as a substitute site for the new junior high school, but after some study of this alternative, the parties unanimously concluded that the substitute site would not be cost-effective or otherwise satisfactory.

Absent any feasible alternative, the parties began in the fall of 1988 seeking de-dedication of the Trevor Park site by the state legislature. In November 1988, the City and the Board wrote to members of the state legislature who represented parts of Yonkers to request their support for the de-dedication of the park land. Members of Yonkers' state legislative delegation responded by requesting, as a precondition for their placing the issue of de-dedication before the state legislature, a home rule message from the Yonkers City Council indicating its support for de-dedication. The City Council refused to consider passing such a measure, and efforts by the monitor and the Board to find an alternative way of obtaining state legislative action were unsuccessful.

In the summer of 1988, counsel for the NAACP informed Parks Commissioner DeSantis that the NAACP would seek court intervention to obtain use of the park if no other means of de-dedication developed. Moreover, during the fall of 1988, the Board, the United States, and the NAACP

agreed that in the absence of legislative action the parties would seek an order of the court deeming the park land de-dedicated. On May 8, 1989, the district court judge met with members of the Parks Board and with DeSantis, at their request, to address the Trevor Park site for the new junior high school. Responding to the Parks Board's concerns about losing scarce park land, the district court responded that the site had been selected after much study and that the issue of the site selection was closed.

Faced with the failure of state legislative efforts to result in the de-dedication of Trevor Park as park land, the district court without objection from any of the parties, including the State of New York, which had been made a party to the case in January 1989, and the City of Yonkers, dispensed with the need for de-dedication by the state legislature and ordered on June 30, 1989, that the designated site at Trevor Park be discontinued as dedicated park land. None of the parties appealed the June 30, 1989, order. However, the City Council, despite the City's having neither objected to nor appealed from the order, passed a resolution stating that it was "deeply concerned with the ruling" and "has been made aware of similar concerns by the Parks Board." The resolution went on to authorize "the City Manager to retain counsel for the Parks Board to commence litigation on behalf of the said Board to contest the authority of the Federal Court to have ordered the de-dedication of such parklands."

On August 28, 1989, after 59 of the 60 days for appealing the court's June 30 order had elapsed, the proposed intervenors in their individual and official capacities filed a motion to intervene as of right in this action "in order to appeal the Court's order taking public parkland in the City of Yonkers." Asserting their interests in preserving precious public park lands, the proposed intervenors contended that their motion was timely because, until the June 30 order, their interests had been protected by the requirement of state legislative action de-dedicating the land. Only after the district court dispensed with this requirement,

they argued, did their need for intervention arise, since they could no longer "rest on their expectation that the State would not approve the taking of the parkland."

The district court denied the motion to intervene, holding that the proposed intervenors lacked standing in their official capacities, and, even assuming they had standing to intervene in their individual capacities, that their interests had been adequately represented by existing parties and that their motion to intervene was untimely. The district court moreover noted that its denial of the motion to intervene would not substantially prejudice the proposed intervenors' interests, since the district court's broad power to effectuate remedial orders would likely be upheld even if the proposed intervenors were allowed to appeal the June 30, 1989, order de-dedicating the park land. We agree with the district court's analysis.

## DISCUSSION

We note initially that this action illustrates the extraordinary nature of this litigation and, in particular, the regrettable subterfuge and intransigence the City of Yonkers has displayed in repeatedly delaying implementation of its constitutional obligation to desegregate the Yonkers public schools. After the City had not objected to the district court's June 30, 1989, order, the Yonkers City Council remarkably passed a resolution expressing its "concern" about the order and authorizing a subdivision of the City government, the Parks Board, to initiate litigation challenging the district court's authority to enter an order de-dedicating the park land. Thus, the City authorized an agency to do what it refused to do under its own name.

■ According to the Yonkers City Charter, the Parks Board lacks the authority to sue or be sued. The Parks Board is appointed by the Mayor with the approval of the City Council, and the Parks Commissioner, appointed by the City Manager, is an ex officio member of the Board. As an advisory body to the City, the Parks Board has opportunity to influence the City's decisionmaking, but lacks a legal existence separate from the City's. Even if the Parks Board can claim that its authority to sue derives from the City Council's resolution authorizing it to initiate this challenge to the district court's order, the proposed intervenors have not established that the City Council can authorize any subordinate agency to exceed its enumerated powers and, more particularly, to challenge a decision of the City itself.

We think that the City must eventually speak with one voice, and that the City may not engage in the duplicity of consenting to a court order, declining to appeal it, and then authorizing one of its subordinate advisory agencies to appeal the order. *Cf. United States v. City of Yonkers*, 856 F.2d 444, 458 (2d Cir.1988) ("For purposes of taking official governmental action, the City of Yonkers is the City Council and vice versa."), *rev'd in part on other grounds sub nom., Spallone v. United States*, —— U.S. ——, 110 S.Ct. 625, 107 L.Ed.2d 644 (1990). Accordingly, we find that neither the Parks Board, nor members of the Parks Board in their official capacities, have standing to intervene in this action where their sole official purpose and authority consists of advising the City and of seeking to advance their positions within the internal decisionmaking processes of the City.

Nevertheless, the proposed intervenors assert, somewhat disingenuously, that they are seeking intervention in their individual as well as official capacities. We say "somewhat disingenuously" because the City's authorization of funds for the Parks Board to seek counsel and intervention in this action was the *sine qua non* of the proposed intervenors' motion. Yet even if we assume, without deciding, that the proposed intervenors have standing in their individual capacities, we still find that their motion to intervene was properly denied, since the only interests they may seek to assert at this stage of the action were adequately represented by existing parties.

■ In this connection, we note that contrary to the contention of the proposed intervenors, the only interests they may

218

timely seek to assert involve not the preservation of park land, but rather the maintenance of those state legislative procedures pursuant to which park land ordinarily is de-dedicated. We agree with the district court's finding that the proposed intervenors' attempt to challenge the selection of the Trevor Park site is untimely. Contrary to their assertions, use of the Trevor Park site for the new junior high school was not mandated by the district court's June 30, 1989, order. The final site selection was done by the parties to this case and followed years of study and citizen input, including input by the Parks Board. The proposed intervenors' failure to seek intervention in the action when the site for the new junior high school was being selected several years ago renders untimely their attempt to challenge the site now.

■ However, insofar as we read their motion to intervene as an attempt to challenge that portion of the district court's order that dispensed with the requirement of state legislative action de-dedicating the park land, we agree that only after the June 30, 1989, order could they have been aware that their interest in preserving the state legislative processes was threatened, and therefore find that their motion to intervene for purposes of asserting such interest was timely. Yet even giving the proposed intervenors this benefit of the doubt, their asserted interest in preserving the state legislative process for de-dedication of park land was adequately represented by the existing parties to this action. See Fed.R.Civ.P. 24(a) (requiring that an application for intervention be timely filed and that the prospective intervenor have an interest not otherwise adequately protected by an existing party).

The City of Yonkers, as proposed intervenors recognize, is charged by law with representing the interests of its individual citizens, and the State of New York has sovereign authority over the legislative interests upon which movants predicate both their derivative rights and injuries. Here, the record indicates that the State of New York, which was made a party to the action in January 1989, reviewed the order de-ded-

icating the park land before it was submitted to and ultimately adopted by the district court on June 30, 1989, and that the State indicated it would accept entry of the order without opposition.

Given these facts, we find unpersuasive the proposed intervenors' contention that the State did not adequately protect its own interest in maintaining its legislative processes. *See generally Washington v. Fishing Vessel Ass'n*, 443 U.S. 658, 692–93 n. 32, 99 S.Ct. 3055, 3077–78 n. 32, 61 L.Ed.2d 823 (1979) ("[T]hese individuals and groups are citizens of the State of Washington, which was a party to the relevant proceedings, and 'they, in their common public rights as citizens of the State, were represented by the State in those proceedings, and, like it, were bound by the judgment.' ") (quoting *City of Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320, 340–41, 78 S.Ct. 1209, 1220–21, 2 L.Ed.2d 1345 (1958)); *United States v. New York*, 820 F.2d 554, 558 (2d Cir.1987) ("A state is presumed to represent the interests of its citizens ... when it is acting in the lawsuit as a sovereign."). If disagreement with an actual party over trial strategy, including over whether to challenge or appeal a court order, were sufficient basis for a proposed intervenor to claim that its interests were not adequately represented, the requirement would be rendered meaningless.

We reject proposed intervenors' contention that *Martin v. Wilks*, — U.S. —, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989), relaxes the requirements for Rule 24(a) intervention in an ongoing litigation. *Wilks* held that one who is not a party to a consent decree designed to remedy discriminatory hiring practices may challenge in a separate litigation employment actions made pursuant to the consent decree. Not only do we decline to extend *Wilks* beyond its particular context, but we also note that *Wilks* applies only when the non-party's interests have not been adequately represented by an existing party. *See id.* 109 S.Ct. at 2184 n. 2. Given that the State of New York protected the proposed intervenors' purported interests in the state legislative process, *Wilks* provides them scant refuge. Certainly, *Wilks* does not purport

to overrule *Washington v. Fishing Vessel Association, supra.*

Finally, we hold that the proposed intervenors in any case did not suffer real prejudice from denial of their motion to intervene. Here we note that their prospective appeal of the June 30, 1989, order would have stood little chance of success. *See Culbreath v. Dukakis,* 630 F.2d 15, 23 (1st Cir.1980) ("We consider the prejudice flowing to the unions from denial of intervention to be as slight as the unions' probability of success on the merits of the issues they would raise upon intervention."). It is axiomatic that "the scope of a district court's equitable powers to remedy past wrongs is broad," *Swann v. Charlotte–Mecklenburg Bd. of Educ.,* 402 U.S. 1, 15, 91 S.Ct. 1267, 1275, 28 L.Ed.2d 554 (1971), and the desegregation cases make clear that a federal district court may order even the suspension of state law to remedy constitutional violations. As the Supreme Court very recently reminded us:

> [A] local government with taxing authority may be ordered to levy taxes in excess of the limit set by state statute where there is reason based in the Constitution for not observing the statutory limitation.... To hold otherwise would fail to take account of the obligations of local governments, under the Supremacy Clause, to fulfill the requirements that the Constitution imposes on them.

*Missouri v. Jenkins,* —— U.S. ——, ——, 110 S.Ct. 1651, 1666, 109 L.Ed.2d 31 (1990); *see also North Carolina State Bd. of Educ. v. Swann,* 402 U.S. 43, 45, 91 S.Ct. 1284, 1286, 28 L.Ed.2d 586 (1971) (invalidating state law that proscribed student assignments on the basis of race on grounds that "state policy must give way when it operates to hinder vindication of federal constitutional guarantees"); *Hoots v. Pennsylvania,* 672 F.2d 1124, 1131–32 (3d Cir.1982) (holding that state law governing the consolidation of school districts and school board elections did not bind the district court in its fashioning of desegregation remedies); *Haney v. County Bd. of Educ.,* 429 F.2d 364, 368–69 (8th Cir.1970) (rejecting contention that district court was bound by state law where its desegregation order required the annexation of a school district). Denial of the motion to intervene for purposes of appealing the June 30, 1989, order accordingly did not substantially prejudice those interests the proposed intervenors sought to vindicate.

Judgment affirmed.